# THE PEOPLE OF THE STATE OF ILLINOIS, ON THE RELATION OF DUNNE, GOVERNOR, AND LUCEY, ATTORNEY GENERAL, v. ECONOMY LIGHT AND POWER COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 179. Argued April 29, 30, 1914.—Decided June 22, 1914.

The provisions in the Ordinance for Government of the Northwest Territory and subsequent acts of Congress to the effect that navigable waters leading into the Mississippi and St. Lawrence rivers shall be common highways and forever free to the inhabitants of that Territory and of the United States do not determine navigability of any of the streams but only define rights dependent upon the existence of navigability.

There is no Federal right involved in the obstruction, or use by private owners, of a non-navigable stream wholly within a State.

The question of navigability of a river wholly within a State is purely one of fact, and where the state court has decided that such a river is non-navigable there is no right left to review.

A State has no Federal rights which it may exert for itself or on behalf of its citizens or of all the citizens of the United States in regard to a river wholly within its boundaries which the highest court of the State has declared to be non-navigable; nor are any such rights created by acts of Congress merely authorizing surveys for and esti-

mates of cost of, improvements and not actually authorizing or appropriating for the same.

Writ of error to review 241 Illinois, 290, dismissed.

THE facts, which involve the jurisdiction of this court under § 237, Judicial Code, to review a judgment of the state court based on a finding of non-navigability of a river wholly within the State, are stated in the opinion.

*Mr. Merritt Starr* and *Mr. Horace Kent Tenney*, with whom *Mr. Elijah N. Zoline, Mr. John S. Miller, Mr. George Packard* and *Mr. Harry A. Parkin* were on the brief, for plaintiffs in error:

The Illinois River and its North Fork, the Des Plaines, are connected with the Chicago River and Lake Michigan by the Chicago Sanitary and Ship Canal. By this means the Great Lakes are connected with the Mississippi. The Ship Canal pours 300,000 cubic feet per minute of water from Lake Michigan into the Des Plaines making it from 6 to 30 feet deep. In this chain of connected navigable waters the Des Plaines makes a link 15.6 miles long. In this link 15.6 miles long the river is from 400 to 600 feet wide and from 6 to 30 feet deep and descends 38 feet. At an island it narrows to 128 feet. In Lake Joliet it spreads out to 1,500 feet in width. A small island which formerly narrowed one place to 60 feet was blasted out and removed in building the Ship Canal. The narrowest place is 128 feet wide. At the dam site it is over 300 feet wide and 6 feet deep and actually navigable throughout. This 15.6 mile link of the Des Plaines receives this increment by Federal permit granted May 8th, 1899, under act of Congress of March 3, 1899, and was made navigable thereby. (U. S. Engrs. Report, 1899, Part I, pp. 40, 41; Ibid., 1900, Part I, p. 42; Chicago Sanitary District Proceedings, 1899, pp. 5675–6). This permanent change in the Des Plaines was made January 17, 1900. Defendant did

not buy its riparian lands forming site of proposed dam on this link of the Des Plaines until December 15, 1906, after the change was complete, the former owner settled with for the change, and all claims of damage barred by the statute of limitations. The state statutes for the construction of the Ship Canal made full provision for compensation to riparian owners on the river into which the canal discharges. (Ill. R. S. 1912, c. 24, pp. 349–359.)

These connecting waters are navigable; and the 15.6 mile link of the Des Plaines is navigable. *Escanaba* v. *Chicago* (Chicago River), 107 U. S. 569; *Huse* v. *Glover*, (the Illinois River), 15 Fed. Rep. 292; 119 U. S. 543; *Lussem* v. *Sanitary District* (the Ship Canal), 192 Illinois, 404; *Missouri* v. *Illinois*, 200 U. S. 496; "An act to create Sanitary Districts and to remove obstructions in the Des Plaines and Illinois Rivers."

Illinois act of May 29, 1889, Ill. R. S. 1912, c. 24, par. 366, § 24, and concurrent Resolution on River Improvement, L. 1889, pp. 375–6: "An Act enabling the Sanitary District to Improve and Bridge Navigable Streams," Ill. Act of May 13, 1901, L. 1901, p. 164: "An Act to enlarge the corporate limits of the Sanitary District of Chicago and provide for Navigation," etc., Ill. Act of May 14, 1903, L. 1903, p. 113; Ill. Act of February 28, 1839, dedicating the Des Plaines as a highway, M. L. 1839, p. 208; Ill. Act of Dec. 6, 1907, declaring the Des Plaines navigable. Ill. R. S., p. 144. The Des Plaines in this 16 mile reach has always been navigable; it was the regular route of the fur trade and was the most navigated commercially of any waters in the State from 1700 to 1832. A multitude of books of geography, history and travel attest this. John Kinzie to U. S. Ter. Gov. Cass, U. S. Archives, Dept. of Interior, Ind. Office Book, 204, Letter Book, Vol. 1; Gov. Ninian Edwards to Secretary of War, VI Am. St. P. Ind. Aff. Vol. II, p. 65. Secretary Gallatin's Report on Means of Communication, 1808,

Am. St. Papers, p. **735; U. S. Surveyor Hutchins in Imlay's Topographical Description, p. 503 (1778–1797); Gov. St. Clair's Report to Pres. Washington, 1790; 2 St. Clair Papers, p. 174; Treaty of Greenville Securing Water Passage, 1795; Am. St. P. Cl. 2, Ind. Add., Vol. I, p. 562; Duc de Choiseul's Memoir on Louisiana, "Affairs, etc., Correspondence Politique, Etats Unis." Supp. Vol. 6, fols. 106–112; Gov. Collot's Voyage dans L' Amerique Septrionale 1826; "Canal Communication between the Illinois River and Lake Michigan." H. R. 18th Cong. 2nd sess., Vol. I, ser. No. 172, finding "uninterrupted navigation from the river into the Lake."

There have been ten United States Surveys of the Des Plaines which treat it as navigable water of the United States, viz.: (1) U. S. Survey by Maj. S. H. Long, 1816–19 reports the Des Plaines as "affording a sufficient depth for boats of moderate draft." (Ex. Doc. 17, 16th Cong. 1st Sess.); (2) by U. S. Surveyor, John Walls, in 1821, who marked its "head of navigation" and that of the Chicago River and laid out "Portage Road" connecting the two; (3) by Gen. J. H. Wilson in 1867 (Ex. Doc. 16, H. R., 40th Cong., 1st sess.); (4) by Gen. Wilson in 1868 (14 U. S. St. L. 418–422; 1 U. S. Eng. Rep. 1868, pp. 459–465); (5) by Col. Macomb, 2 U. S. Eng. Rep. 1875, p. 525; (6) by Maj. Benyaurd, 3 U. S. Eng. Rep. 1884, pp. 195–7–62; (7) by Col. Comstock, 2 U. S. Eng. Rep. 1887, pp. 2125–67; (8) in 1889 by Capt. Marshall, Ex. Doc. 264, U. S. Eng. Rep. 1890, App., JJ. pp. 2428–2550; (9) by Col. Barlow, 50 U. S. Eng. Rep. 1900, pp. 3857, 4 U. S. Eng. Rep. 1901, pp. 3061–2; (10) by Col. Ernst and a Board of Engineers; Ex. Doc. 263, H. R., 59th Cong., 1st sess.

The Secretary of War wrote to the Attorney General of Illinois informing him that the Des Plaines was a navigable water of the U. S., and that no permit had been granted for this dam. The letter of Gen. Oliver to Mr. Munroe

appreciating his proposals but declining to give any permit binds nobody. *Hubbard, Receiver of Hudson Water Company,* v. *Fort, Governor and Attorney General of New Jersey,* 188 Fed. Rep. 993; *Minnesota Canal &c. Co.* v. *Pratt,* 101 Minnesota, 197, *S. C.,* 11 L. R. A. (N. S.) 105.

This early commercial use in the fur trade ended with the Black Hawk War in 1832 and the inrush of immigration that followed. This is the route and this the commerce which was protected by the Ordinance of 1787. In 1836 the State began building the original Illinois and Michigan Canal and filled it from the Des Plaines, returning the water to the river after a detour of eleven miles. By this interruption, the old canal superseded the river commercially until itself was superseded by the railroads. The original navigability of the Des Plaines was restored and enlarged by the discharge into it by Federal authority of the navigable waters of Lake Michigan. The public right in this historic waterway is not lost by non-user. It is inalienable. *Ill. Cent. R. Co.* v. *Illinois,* 146 U. S. 387; *People* v. *Page,* 39 N. Y. App. Div. 110; *People* v. *Vanderbilt,* 26 N. Y. 287; *S. C.,* 28 N. Y. 396; *Hartford* v. *Hartford Bridge Co.,* 10 How. 534.

The defendant demurred to the allegation that the stream as altered and improved was rendered navigable in 1900; and the state courts both sustained the demurrer as a matter of law and held that the artificial navigability so created was irrelevant and immaterial. Upon this there was no finding of fact below.

As a matter of law, a stream artificially increased in volume and otherwise improved by public action is to be judged thenceforward in its altered condition. *Phila. Co.* v. *Stimson,* 223 U. S. 605, 634–5; *Union Bridge Co.* v. *United States,* 204 U. S. 364 at 400; *Monongahela Bridge Co.* v. *United States,* 216 U. S. 177, 193–4; *United States* v. *Chandler-Dunbar Co.,* 229 U. S. 53; *Scranton* v. *Wheeler,* 179 U. S. 141; *St. Anthony's Falls Water Co.* v. *St. Paul*

*Water Comrs.*, 168 U. S. 349; *Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 518, 561–2; *The Monticello*, 20 Wall. 430; *West Chicago St. R. Co.* v. *Chicago*, 201 U. S. 506, 524, as to Chicago River so artificially made navigable. *In re Chicago River*, 20 Opin. U. S. Atty. Gen. 101.

Federal and state action were concurrent in the improvement of the Des Plaines. The State furnished the channel at a cost of over $50,000,000, and the Federal Government furnished the navigable water from Lake Michigan. By acts of Congress of March 3, 1899 (30 Stat., p. 1121); act of June 6, 1900 (31 Ibid., p. 580); act of June 13, 1902 (32 Ibid., p. 364); act of June 25, 1902 (36 Ibid., pp. 630, 659–60), Congress has appropriated moneys for the survey and improvement of the Des Plaines and thereby impressed the Federal character upon it. That the Federal part of the improvements has not yet been built is not controlling. It is the act of Congress and not the subsequent act of the laborer in making the excavation which fixes the Federal character. "When Congress has by any expression of its will, occupied the field, that action is conclusive." *Wisconsin* v. *Duluth*, 96 U. S. 379, 387.

The act of Congress of March 3, 1899 (30 Stat., p. 1146), specifically appropriates $200,000 for the survey of the Des Plaines, and that of June 25, 1910 (36 Stat., pp. 630, 659–60), appropriates $1,000,000 for its improvement, upon coöperation by the State of Illinois, as a navigable water of the United States; and §§ 9 and 10 of the former (pp. 1146, 1151) forbid the damming of such streams. These acts apply to the Des Plaines and give the State a special interest which it can protect by suit. The lands constituting the site were canal lands granted by the U. S. to the State of Illinois for navigation purposes and are impressed with a trust therefor; and the State while owning the lands enacted the statute of 1839 dedicating the Des Plaines as a highway to be used in

connection with the canal. Such dedication is binding. *McConnell* v. *Lexington*, 12 Wheat. 582; *Morris* v. *United States*, 174 U. S. 196; *Bennett* v. *Chicago &c. R. Co.*, 73 Fed. Rep. 696; *Union Canal Co. v. Landis*, 9 Watts, 228. The state legislature to whom Congress confided the protection of the stream, by the act of December 6, 1907, ordered this suit brought; and by the act of 1911, ordered this proceeding to review same in this court.

The existence of similar right of action on the part of the Federal Government does not divest the right of the State. *Georgia* v. *Tennessee Copper Co.*, 206 U. S. 230.

The State has the right to maintain its suit as *parens patriæ* to enforce rights conferred by Federal laws upon it and its people. *Missouri* v. *Illinois*, 180 U. S. 208, 242-4, 200 U. S. 496; *Kansas* v. *Colorado*, 185 U. S. 125, 206 U. S. 46; *Georgia* v. *Tennessee Copper Co.*, 206 U. S. 230; *Illinois Central R. Co.* v. *Illinois*, 146 U. S. 387; *Am. Express Co.* v. *Michigan*, 177 U. S. 404.

The State may assert a right in its own courts under Federal laws and is not concluded by the judgment of its own court. It is entitled to a writ of error from this court thereon. *New Jersey* v. *Yard*, 95 U. S. 104; *Alabama* v. *Schmidt*, 232 U. S. 168.

The act of Congress of March 3, 1899, gives the state legislature the authority to permit or prevent the damming of a stream whose navigable part is in one State. The action of the state legislature in exercising this Federal grant of authority presents Federal questions for review. *United States* v. *Bellingham Boom Co.*, 176 U. S. 211; *Cummings* v. *Chicago*, 188 U. S. 410, 431.

The State, like any other party specially affected by a breach of Federal law, may maintain suit for its violation. *Hubbard, Recr. of Hudson Co.*, v. *Fort et al., State Officers of New Jersey*, 188 Fed. Rep. 993; *Wilson, Atty. Gen. of New Jersey*, v. *Hudson Co.*, 76 N. J. Eq. 543.

And the jurisdiction to review the judgment in such

suit is not abridged by the fact that the plaintiff elected to pursue an ancient remedy in the state court. *Belden* v. *Chase*, 150 U. S. 674, 691. *Egan* v. *Hart*, 165 U. S. 138, does not apply, because there the state court found the facts, here it sustained a demurrer. Here the entire evidence is certified up and shows facts diametrically opposite to those in *Egan* v. *Hart*. There the riparian owner sought to enjoin the public work, viz.: The erection of a public levee by concurrent action of state and Federal Government, from going on. Here the State seeks to enjoin the riparian owner from obstruction in order that public work, in which state and Federal Government participate, may go on. The levee in *Egan* v. *Hart* was authorized by state legislation, but here the proposed dam is not so authorized, but on the contrary is forbidden by state legislation. The bayou in *Egan* v. *Hart* connected with nothing. The Des Plaines connects the Great Lakes with the Mississippi. There the public levee obstructed high water only; here the private defendant proposes to take exclusive occupation of the stream. *Egan* v. *Hart* was decided before the enactment of the act of Congress of 1899 which establishes a new and different rule.

The judgment of the state court was reached (1) by erroneously disregarding the permanent improvements in the stream and attempting to deal with it as in a state of nature; (2) and by erroneously disregarding the only available evidence of a state of nature, viz.: That contained in the books of history, geography, travel and Government survey. The state of nature ceased to exist in 1833, and there was no living witness in 1908, who could testify thereto. But although altered, the river continued in use until 1848. As Federal questions were involved this court applies its own standards and rules to the question of navigability and to the evidence. *Mackay* v. *Dillon*, 4 How. 421, 447.

Defendant claims only as a riparian owner whose rights

are subject to the paramount right of, and changing needs of navigation. *West Chi. St. R. Co.* v. *Chicago*, 201 U. S. 506, 520; *Lewis, Oyster &c. Co.* v. *Briggs*, 229 U. S. 82, affirming 198 N. Y. 287.

The "decision" or "opinion" of the state Supreme Court on the question of artificial navigability alleged in the bill and demurred to by defendant, cannot operate as a finding of facts. *Stone* v. *United States*, 164 U. S. 380; *Saltonstall* v. *Birtwell*, 150 U. S. 417; *Jackson* v. *United States*, 230 U. S. 1, 18.

Modern developments of shallow draft navigation by boats propelled by gasoline and electricity have brought many streams which were navigated before the use of steamboats and then temporarily disused back into use as navigable streams. The variations in the art do not divest the rights of the public. *In re Debs*, 158 U. S. 564; *Phila. Co.* v. *Stimson*, 223 U. S. 605, 634–5; *Pennsylvania Co.* v. *Wheeling Bridge*, 18 How. 421, 431.

Where Federal and state action are interwoven upon a subject and Federal questions are presented, the decision of the state court is not conclusive but is reviewable here; and this court will determine the scope and significance of the Federal questions and the effect of the evidence thereon for itself. *Missouri* v. *Elliott*, 184 U. S. 530; *Kaukana* v. *Green Bay Canal*, 142 U. S. 254, 269; *Green Bay & Canal Co.* v. *Patten Paper Co.*, 172 U. S. 58; *Chapman* v. *Goodnow*, 123 U. S. 540; *C., B. & Q. R. Co.* v. *People*, 200 U. S. 561; *Gaar, Scott & Co.* v. *Shannon*, 223 U. S. 468, 471; *West Chicago St. R. Co.* v. *Chicago*, 201 U. S. 506, 519, 520; *Furman* v. *Nichol*, 8 Wall. 44; *Dower* v. *Richards*, 151 U. S. 658, 667; *Mackay* v. *Dillon*, 4 How. 421, 447. The contention that there was no evidence tending to establish liability under a Federal statute, itself involves a Federal question. *St. Louis, I. M. & S. R. Co.* v. *McWhirter*, 229 U. S. 265.

"Navigable stream" as a term in the Federal statutes

is to be defined by the Federal courts; and measured and tested by Federal standards the Des Plaines is and always has been navigable. The act of May 18, 1796, 1 Stat. c. 29, pp. 464–9) and the act of Congress of March 26, 1804, 2 Ibid., p. 227, containing these terms and dedicating streams as highways, apply. *Des Plaines River Co.* v. *Schurmeyer*, 7 Wall. 272. What they apply to is a Federal question for this court to decide. These Acts continued in force after the admission of Illinois. *United States* v. *Sandoval*, 231 U. S. 28; *United States* v. *Gratiot*, 14 Pet. 34. These acts of Congress were in force long before the invention of the steamboat and they protect shallow draft navigation. The defendant by denying the continued validity of these acts after the admission of Illinois drew them in question. *Sharpleigh* v. *Surdam*, 21 Fed. Cas. 1173–8; *Jones* v. *Walker*, 2 Paine, 688; *S. C.*, 13 Fed. Cas. 1059–62. The Illinois courts applied the early established local definition and standard of navigability, which rejects rafting, passenger traffic and shallow draft navigation. *Hubbard* v. *Bell*, 54 Illinois, 110; *Schulte* v. *Warren*, 218 Illinois, 108. This standard so applied, is in conflict with the Federal standard as laid down in *The Montello*, 20 Wall. 430, and *The Daniel Ball*, 10 Wall. 557, and in the acts of Congress protecting rafting and shallow draft navigation. Rev. Stat., § 5254. Acts of Congress of July 5, 1884, c. 229, § 8 (6 Fed. St. An., p. 795), and of March 23, 1906, 34 Stat., c. 1130, § 40; *United States* v. *Bellingham Boom Co.*, 176 U. S. 24; *Passenger Cases*, 7 How. 283; *Gibbons* v. *Ogden*, 9 Wheat. 1, at 189 and 215.

*Mr. Frank H. Scott*, with whom *Mr. Gilbert E. Porter* and *Mr. Edgar A. Bancroft* were on the brief, for defendant in error:

As no Federal question was decided by the state court adversely to plaintiff in error, this court has no jurisdiction. The assignments of error are predicated upon the

assumed existence of the one fact that the Des Plaines River is a navigable stream which is negatived by the judgment of the state court.

The question of navigability is purely one of fact; *Egan* v. *Hart,* 165 U. S. 188; and where the state court denies the existence of facts necessary to bring the case within the operation of Federal statutes, this court has no jurisdiction. *Crary* v. *Devlin,* 154 U. S. 619; *Cameron* v. *United States,* 146 U. S. 533.

Plaintiff in error contends that in the state court it set up and claimed the title, right, privilege and immunity to have the Des Plaines River preserved as a highway, free of obstruction by defendant in error's dam, under certain acts of Congress relating to navigable streams, and the Ordinance of 1787. The ordinance and acts relied on ceased to have any force in the State of Illinois upon its admission to the Union. *Van Brocklin* v. *City of Tennessee,* 117 U. S. 151; *Escanaba Company* v. *Chicago,* 107 U. S. 678; *Hamilton* v. *Vicksburg &c. R. R. Co.,* 119 U. S. 280; *Huse* v. *Glover,* 119 U. S. 543, 546; *Permoli* v. *First Municipality,* 13 How. 589; *Pollard* v. *Hagen,* 3 How. 212; *Dixon* v. *The People,* 168 Illinois, 179; *People* v. *Thompson,* 155 Illinois, 451.

The provisions of these acts relied on do not refer to physical obstructions of navigable streams, but to political regulations which would hamper freedom of commerce, and they do not prohibit the construction of dams, even though such dams may completely obstruct navigation. *Wilson* v. *Black Bird Creek Marsh Co.,* 2 Pet. 245; *Pound* v. *Turck,* 95 U. S. 462; *Willamette Iron Bridge Co.* v. *Hatch,* 125 U. S. 1–11, and cases cited therein; *Cardwell* v. *American Bridge Co.,* 113 U. S. 205. Notwithstanding such acts, the rights of riparian owners are to be measured by the rules and decisions of the state courts. *St. Anthony Falls Water Power Co.* v. *St. Paul Water Commissioners,* 168 U. S. 349, 358. Under the laws of Illinois

the riparian owner had the right to dam the Des Plaines
River and have the benefit of the increased flow caused by
artificial means.  *Druley v. Adams*, 102 Illinois, 177;
*People* v. *Economy Light & Power Co.*, 241 Illinois, 290.
The effect of the decision of the state courts that the Des
Plaines River was not a navigable stream at once removed
the question whether plaintiffs in error had any rights
under those acts. Those acts apply in terms only to navi-
gable streams, and the decision of the state court that
the river is not navigable made it unnecessary for the
court to pass upon the Federal question, if one existed.
*Egan* v. *Hart, supra; Chrisman* v. *Miller*, 197 U. S. 313;
*King* v. *West Virginia*, 216 U. S. 92; *Mammouth Mining
Co.* v. *Grand Cent. Min. Co.*, 213 U. S. 72; *Chapman &c.
Land Co.* v. *Bigelow*, 206 U. S. 41; *Waters-Pierce Oil Co.* v.
*Texas*, 212 U. S. 86; *Rankin* v. *Emigh*, 218 U. S. 27.

Plaintiff in error also claims that under the act of
March 3, 1899, it has the title, right, privilege and im-
munity to have the Des Plaines River preserved as a high-
way. This right was not set up or claimed in the trial court,
or passed upon by the state Supreme Court, and the claim
now made thereunder confers no jurisdiction upon this
court. Under the rule of procedure in Illinois, points
which could have been, but were not, raised in the trial
court, will not be reviewed on appeal. *Dunne* v. *Critchfield*,
214 Illinois, 292, 297; *McKenzie* v. *Penfield*, 87 Illinois, 28–
40; *Masonic Ass'n* v. *City of Chicago*, 217 Illinois, 58–60;
*Griveau* v. *South Chicago City Railway Co.*, 213 Illinois,
633.

Where such a rule of procedure prevails, this court will
not take jurisdiction to review a Federal question not
raised in the trial court unless decided by the state court
on appeal, *Mutual Life Ins. Co.* v. *McGrew*, 188 U. S. 291;
*Spies* v. *Illinois*, 123 U. S. 131, 181; *Chappell* v. *Bradshaw*,
128 U. S. 132, 133; 3 Foster's Federal Practice, 5th ed.,
p. 2402; *Ex parte Chadwick*, 159 Fed. Rep. 576, 577, 578,

and no question under the act of 1899 was decided by the state Supreme Court.

Plaintiff in error's contention that the Federal improvement of the Des Plaines River in coöperation with the State of Illinois, confirms the Federal character of the stream, is based upon a false premise. No Federal improvement of the Des Plaines River has ever been made, and the State of Illinois has never taken any steps for the improvement of the river. The Sanitary District Act, which plaintiff in error relies upon, did not include in its scheme the improvement of the Des Plaines River for navigation. The purpose of that act was sanitation, and up to this time no deep waterway has been attempted either by the State or the Nation, and hence there has been no coöperation between them. The state Supreme Court has so held in this case. *People* v. *Economy Power Co.*, 241 Illinois, 290, 331.

The acts of Congress of 1899, 1900, 1902, 1910, which plaintiff in error contends make appropriations for the improvement of the Des Plaines River and constitutes the exercise of jurisdiction over that river, merely make appropriations for surveys to determine the feasibility of improving the Des Plaines and Upper Illinois for navigation. Those acts recognized that the Des Plaines River was not navigable, and were not the exercise of jurisdiction over the river.

No permission for the construction of a dam was ever asked of the War Department or refused by it. The plans were submitted to the Department for the purpose of ascertaining whether they were in harmony with the plans for the deep waterway, and the Department held that they would be an aid to the deep waterway plans then under consideration, and would save to the United States a large sum of money in the construction of a deep waterway.

The War Department expressly held that the Des

Plaines 'River was not navigable, and that the United States had no jurisdiction over it, and that the act of 1899 did not apply to it.  The State of Illinois is not entitled to restrain the construction of the dam 'because of the failure to procure a permit from the War Department under an act which the War Department has held does not apply to the stream.

MR. JUSTICE McKENNA delivered the opinion of the court.

This was a proceeding brought in the Circuit Court of Grundy County, Illinois, being an information filed by the Attorney General of the State on behalf of the people of the State on the relation of the Governor, against defendant in error, the Economy Light & Power Company, to restrain that company from erecting a dam across the Des Plaines River and from causing the waters of the river to back up and overflow the lands of the State, to refrain from permitting the obstructions placed in the river to remain therein, and that certain deeds, leases and contracts made by the canal commissioners of the State to the company be declared null and void.  The information was dismissed by the Circuit Court and its decree was affirmed by the Supreme Court.  This writ of error was then sued out by plaintiffs in error.

A motion is made to dismiss on the grounds—(1) that no Federal question was decided by the Supreme Court adversely to plaintiffs in error.  (2) The Federal questions sought to be raised in this court were not raised in the trial court and under the practice in Illinois were not open to review in the Supreme Court, and were not reviewed. (3) The Federal questions raised are without merit. (4) The decision of the Supreme Court is sustainable upon non-Federal grounds.

The motion makes necessary a consideration of the

allegations of the information and of the grounds of decision of the court.  The information alleges the following: The State of Illinois was formed out of the Northwest Territory ceded by Virginia to the United States in 1784, and by the ordinance for the government of the territory it was declared in Article 4 that "the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory as to the citizens of the United States and those of any other States that may be admitted into the Confederacy, without any tax, impost or duty therefor."

On May 18, 1796 (1 Stat. 464, c. 29), Congress passed an act for the sale of lands of the United States in the territory northwest of the Ohio River and above the mouth of the Kentucky River, by § 9 of which act it was provided that all navigable rivers within the territory to be disposed of by virtue of the act should be deemed to be and remain public highways.  Subsequently there was separated from such territory by an act of Congress dated May 7, 1800 (2 Stat. 58, c. 41), the portion thereof which now embraces the States of Illinois and Louisiana, to be called Indiana Territory.  On March 26, 1804 (2 Stat. 277, c. 35), Congress, acting under the constitution of 1787, passed an act for the disposal of the public lands in Indiana Territory, by which it was provided that all the navigable rivers, creeks and waters within that Territory should be deemed to be and remain public highways.

By an act of February 3, 1809, 2 Stat. 514, c. 13, Congress divided the Indiana Territory and constituted that portion of it which now comprises the State of Illinois a separate territory, to be called Illinois, and provided that its inhabitants should be entitled to and enjoy all and singular the rights, privileges and advantages

granted and secured to the people of the Northwest Territory by the ordinance of July 13, 1787.

On April 18, 1818 (3 Stat. 428, c. 67), Congress passed an act to enable the people of Illinois to form a constitution and state government for admission into the Union upon an equality with other States and provided that the government should be republican and not repugnant to the ordinance of July 13, 1787. A constitution was adopted and Congress, on December 3, 1818 (3 Stat. 536), declared the admission of the State into the Union, that its constitution and government were republican and in conformity to the provisions of the articles of compact between the original States and the people and the States in the territory northwest of the river Ohio, passed on July 13, 1787 (1 Stat. 51n.).

The river Des Plaines is situated in the Northwest Territory, rises in Wisconsin and flows southerly into the State of Illinois (its course is given), in all a distance of about ninety-six miles.

The river Kankakee rises in Indiana and flows westerly into Illinois and unites in Grundy County with the Des Plaines, forming with it the Illinois which flows thence westerly and southwesterly through several counties in Illinois into the Mississippi River. Wherefore by reason of the fact that the Des Plaines River is wholly within the Northwest Territory and that it empties its waters into the Mississippi, and by reason of the other facts set forth, it is subject to the provisions of the acts of Congress set out.

It is shown by early explorations and discoveries that the Des Plaines River was navigable from a point near where is now situated the City of Chicago to its mouth, and was used as a highway for commercial purposes, and commerce was carried on over it and over the Chicago River, located in Cook County, Illinois, and connection therewith made by a short portage between the two

rivers near the site of what is now the City of Chicago and was in use as a highway of commerce leading from Lake Michigan and the waters emptying into the St. Lawrence River on the one hand, and the waters of the Mississippi River on the other, thenceforward from the time of said first use up to and at the time when the ordinance of 1787 and the several acts of Congress were respectively enacted.

Afterward the State of Illinois, by and through its legislature and in obedience to the several acts of Congress set forth, assumed charge of the river and in 1839 gave permission for the building of a toll bridge across the river, and subsequently by an act passed in 1839 amending the several laws in relation to the Illinois and Michigan Canal it was provided that no stream of water passing through the canal lands should pass by the sale so as to deprive the State of the use of such water if necessary to supply the canal without charge for the same; and it was further provided that the lands situated upon the streams which have been meandered by the surveys of public lands by the United States should be considered as bounded by the lines of those surveys and not by the streams. In the same year an act was passed declaring the river a navigable stream and providing that it should be deemed and held a public highway and should be free, open and unobstructed from its point of connection with the canal to its utmost limit within the State for the passage of all boats and water craft of every description.

In 1845 the State authorized the construction and continuance of the mill dam across the river with reservation of the right to the State of improving the dam and of using the water for the canal, and for any other purpose; and in 1849 authorized the building of a bridge at Lockport. The State by certain acts of its legislature (they are set out) created the Sanitary District of Chicago, under the provision of which a channel was constructed connecting Lake Michigan with the Des Plaines River, at a point

some sixteen miles above the site of the dam in question, and through which about 300,000 cubic feet of water per minute are drawn through the Chicago River and the Sanitary District Drainage Channel and discharged in the Des Plaines River.

It was provided that the channel when completed should be a navigable stream and that when the General Government should improve the river it should have full control over the same for navigation purposes, but not to interfere with its control for sanitary drainage purposes.

On December 6, 1907, the legislature passed an act, which is as follows:

"Sec. 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly: That the Des Plaines and Illinois rivers throughout their courses from and below the water power plant of the main channel of the Sanitary District of Chicago in the township of Lockport, at or near Lockport, in the county of Will, are hereby recognized as and are hereby declared to be navigable streams, and it is made the special duty of the Governor and the Attorney General to prevent the erection of any structure in or across said streams without explicit authority from the General Assembly, and the Governor and Attorney General are hereby authorized and directed to take the necessary legal action or actions to remove all and every obstruction now existing in said rivers that in any wise interferes with the intent and purpose of this act."

The relator, Charles S. Deneen, is the Governor referred to in the act and that by virtue of the statute, his office and constitutional duty he has a special interest and responsibility in the matters set forth.

The purchasers from the State in section 25 and other similarly situated lands with reference to the Des Plaines River did not take, and did not claim to take, under their several purchases that portion of the lands lying between

the meander line and the water of the river and that the
lands so lying have never been used by any individual
under any claim of authority or right vested in the pur-
chasers from the State of Illinois, save and except as
claimed by defendant. Lands so lying, therefore, together
with the bed of the stream of the river in said quarter-
section, and other lands similarly situated with reference
to the river, have not passed by any purchase of adjoining
lands from the State of Illinois, but the same and every
part thereof is owned by the State and held for the benefit
of its people and of the people of the United States as a
public highway for commerce.

The trustees of the Illinois and Michigan Canal exe-
cuted and delivered to one Charles E. Boyer a deed bear-
ing date October 22, 1860, to land in section 25, excepting
and reserving so much as was occupied by the canal and its
waters, and a strip ninety feet wide on either side of the
canal, containing 196 62–100 acres, the tract being a por-
tion of the land granted by the United States to the State
to aid the State in opening a canal to connect the waters
of the Illinois River with those of Lake Michigan and by
the State granted to the Board of Trustees of the canal
for the purposes set forth in the act of February 21, 1843.

The defendant derives its title by mesne conveyances
from Boyer and certain contracts and leases entered into
between the canal commissioners and one Harold F. Gris-
wold and assigned to defendant, and in pursuance of the
claim of right thus obtained defendant commenced the
construction of a dam across the river, but that the said
several leases, deeds and contracts are ineffectual to confer
any right to build or maintain the dam.

The legislature of the State, by a proper resolution
passed on October 16, 1907, has proposed the building
of a deep waterway commencing at the southern end of
the Chicago Drainage Canal and extending along the
Des Plaines River, to be submitted to a vote of the people

of the State, and, if the same is built, as incident thereto locks and dams will necessarily be constructed across the deep waterway at or near the S. E. ¼ of section 25, which dams will incidentally afford water power of the value of several millions of dollars to the State which will be lost to the State if the defendant be permitted to construct the dam in question.

The 90-foot strip along the line of the Illinois and Michigan Canal constitutes an integral part of the canal and the trustees of the canal and the canal commissioners of the State had no right or authority under the law to convey the same by deed, lease or otherwise. Wherefore the defendant acquired no right to such strip and said deeds, leases, contracts and other agreements are void so far as they pertain to the bed of the stream of the river, and to the lands lying outside of the meander line.

By virtue of the several acts of Congress set forth, the State is the owner of such lands and other lands similarly situated. The defendant, claiming to own such lands and other lands in section 25, has actually begun the erection of the dam referred to; the Attorney General, therefore, on December 12, 1907, served notice upon the defendant to desist from the erection of the dam and from further trespassing upon the lands owned by the State, and to remove any and all obstructions placed thereon. Defendant has ignored the notice and unless prevented by injunction will complete the dam to the great impairment of navigation and to the great and irreparable damage of the people of the State.

There are other allegations in regard to the leases and contracts from the canal commissioners which are not necessary to be given.

The prayer of the information was for an injunction in accordance with the allegations.

Defendant in error summarizes its answer as follows: It denied that the Des Plaines River was or ever had been

navigable, and alleged that it never had been navigated for the purpose of commerce; and also that it had from the earliest times been completely obstructed by various bridges and dams built without legislative authority, and that the State itself had constructed and for many years, maintained, and still maintains, a dam entirely across the river at Joliet. It set out correspondence with the War Department of the United States before the construction of the dam was begun, from which it appeared that the plans of the proposed structure were submitted to that Department for the purpose of ascertaining whether the project would be in harmony with the work of the improvement of the river proposed—but never decided upon—by the Government, and that the officers of the Department stated not only that it would be so in harmony but if carried out it would save the Government large sums of money. The correspondence also stated that the river had never yet been considered a navigable stream of the United States and that it was not subject to the provision of §§ 9–13 of the act of March 3, 1899 (30 Stat. 1151, c. 425), or to other similar United States legislation.

The answer further alleged that subsequently defendant in error acquired the property and that a large sum of money had been expended and heavy obligations incurred by it in carrying out the project of building the dam.

Upon the issues thus made, evidence was taken, which composes three large volumes upon which the courts below decided against plaintiffs in error; and we are to consider whether in so doing any Federal right was passed upon or denied it.

To sustain the contention that such right was passed upon and denied, it is said "that at the time the information in equity was filed, and for over six years before the defendant in error became a riparian owner, the Des Plaines River, irrespective of the question of its naviga-

bility, was a navigable river of the United States at the point where the dam was erected" and this because of the "concurrent action of the State and Federal Governments by the construction of the Chicago Sanitary Ship Canal, the connection of it with the Chicago River and Lake Michigan on the northeast and the discharge of the water into Lake Michigan from it into Des Plaines and Illinois on the southwest."

It is further contended that the state court did not decide this question adversely to plaintiffs in error but, on the contrary, excluded the admitted fact as being immaterial because that condition was artificially created. And this because defendant in error urged in that court that the navigability of the river could not be determined by its capacity as improved by the addition of the water of the Sanitary District. The court in its decision, therefore, it is the final contention, denied the rights arising from the condition of navigability thus created by state and Federal action, and plaintiffs in error insist that "if artificial navigability can create a public right which is entitled to protection against the acts of one who purchases riparian property after that condition was created, then on the conceded law the judgment of the state court was erroneous. And if those public rights are created or protected by Federal law, this court has jurisdiction to reverse the judgment."

The inquiry immediately occurs, How did the so-called public right arise? From the mere addition of water to the river or by the conditions upon which it was admitted? The bill alleges the enactment of many laws and a complex system of improvements by virtue of them, rights asserted by the State to the lands bordering on the river and rights to the bed of the river, conveyances, leases, and contracts by public officers constituted by laws which verbally, at least, confer authority upon them, and rights asserted by defendant in error arising from the execution

of such authority. But all of the questions hence arising
are state questions, whether depending upon law or fact,
which it is not in our province to review. It would seem,
therefore, at the outset that one of the elements of the
Federal right asserted is absent. However, let us see
what the Supreme Court of the State has decided.

Mr. Justice Vickers, delivering the opinion of the
court, says, (241 Illinois, p. 309): "Appellant [the State]
bases its claim on three propositions—as follows: (1) That
the State of Illinois owns the bed of the river at the point
where it is proposed to build said dam; (2) That the Des
Plaines River is a navigable stream, and that the proposed
dam would constitute an obstruction to navigation;
(3) That certain contracts executed by the commissioners
of the Illinois and Michigan Canal, under which appellee
[defendant in error] claims certain rights in connection
with the construction of said dam, are void, and that no
rights were acquired by or can be asserted under said
contracts."

The first and third propositions manifestly involve state
questions and were decided adversely to plaintiffs in
error. They might be put out of discussion except so far
as they may have bearing on the second proposition. By
the second proposition the navigability of the river is
presented as a question of fact, and of it the court said
that it had received the most exhaustive treatment by
counsel, and that if the dismissal of the bill by the court
below had been without prejudice to renew the application
for injunction the action of the court could be sustained
because of the utter failure of the plaintiffs in error to
prove that the construction of the proposed dam would
be an obstruction to the then navigation of the river.
"There is no proof," the court said (p. 320), "that the
river is now being used as a public highway for commerce.
On the contrary, the evidence not only shows that the
river is not being so used, but it shows affirmatively that,

owing to the presence of numerous other dams and some
fifty or more bridges which span the river, it would be im-
possible, under existing conditions, to navigate the same.
There being at present no navigation whatever upon the
river, obviously the dam in question cannot be said to be
an obstruction to navigation that has no existence in
fact." The trial court not making the indicated reserva-
tion but having rendered a decree based on the finding
that the river was not navigable, thus settling the ques-
tion for all time, the Supreme Court considered the ques-
tion as presented on the merits. After a review of the
evidence and the contentions of the parties, it decided
that the river was not navigable in a state of nature, and
declared that there was not in the entire record a well
authenticated instance in which a boat engaged in com-
merce navigated the waters of the Des Plaines River.
Referring to the testimony, the court said (p. 336), "What-
ever may be thought of the preponderance of it one way
or the other, it can have but little weight as against the
uncontroverted fact that the river has never been used as
a public highway for commerce." And again (p. 338),
"After the most careful consideration of this question
we are of the opinion that the Des Plaines River in its
natural condition is not a navigable stream, and that the
rights of parties to this suit must be determined upon that
basis." The court besides rejected the contention that
the Sanitary District Act declared the river to be navi-
gable. The contention, it was said, was "based on a sen-
tence in § 24 of said act, as follows: 'When such channel
shall be completed, and the water turned therein, to the
amount of 300,000 cubic feet of water per minute, the
*same* is hereby declared a navigable stream.' Appellant's
[the State] contention, under this statute, is thus stated
in its brief: 'The *same* means that the water flowing in
that channel is a navigable stream. The water so turned
in was navigable in fact, and it does not lose its naviga-

bility in passing out of the artificial channel into the channel of the Des Plaines River. The water is just as navigable one-half mile southwest of Joliet as it is one-half mile northeast of Joliet.' The argument is based upon an erroneous construction of the word 'same.' That term refers to the channel of the Sanitary District and has no reference to the water after it leaves the channel" (p. 329).

The court, however, said that even if the legislature had declared in unequivocal language that the river was navigable, as it did by the act of 1907 [the act under which the information was filed], the declaration could not affect the rights of defendant in error, they being protected by the constitution of the State which forbids private property from being taken for public use without just compensation previously made, for which the court cited a number of cases and Cooley on Constitutional Limitations (side p. 591). And it was added that none of the legislative acts had the primary purpose of permitting a deep-water channel from the Lakes to the Gulf by means of improving the channel of the Des Plaines River, nor did the various acts passed in the interest of the Illinois and Michigan Canal nor the Sanitary District Act include a general scheme for the improvement of that river. "Up to this time," it was further said (p. 331), "no general plan for the deep waterway has been adopted, either by the State or the Nation," and whether any such enterprise will ever be adopted and whether it will include the Des Plaines River "are all legislative questions, with which the courts have no concern." If it be done, the court continued, it must be done "with due regard . . . to the sacred rights of every citizen, however humble and insignificant those rights may seem in contrast with the great public consummation."

We have already seen that the contention of the plaintiff in error that the bed of the river was in the State and

not in the riparian owners, among whom is defendant in error, by force of the act of the legislature of the State of February 26, 1839, in relation to the Illinois and Michigan Canal, was held untenable, and it was further held that the contracts of the canal commissioners under which defendant in error claims rights were valid. And the court further decided that the legislation of the State did not intend nor contemplate the improvement of the Des Plaines River from a condition of non-navigability to navigability and no act, except that of 1907, had declared it to be navigable, and that no act could do so and affect private rights under the constitution of the State. The supreme tribunal of the State, has, therefore, decided that plaintiffs in error have no elements of right against defendant in error.

It is said, however, as a foundation of a right under the acts of Congress alleged, that the river, although it was not navigable in its natural state became so by the addition of water from the Sanitary District. This contention was rejected by the Supreme Court, the court deciding, as we have seen, that the navigability of the river was to be determined by its natural condition and not by its condition created by artificial means. In resistance to this conclusion of the court and in assertion of a Federal right, plaintiffs in error cite, besides the acts of Congress referred to in the information certain acts of Congress passed in 1899, 1900 and 1902 appropriating money for "a survey and estimates of cost for the improvement of the upper Illinois and lower Des Plaines Rivers in Illinois, with a view to the extension of navigation from the Illinois River to Lake Michigan," and adduce, besides other recognitions by Congress of the navigability of the river, and contend that therefore, the rights of the State are based on Federal laws, and "that in its sovereign right, and as *parens patriae* and of its citizens, and *on behalf of the citizens of all of the United States* [italics counsel's], it had

the right under those Federal laws to prevent the accomplishment by defendant of an act destructive of the navigability of the stream."

Plaintiffs in error state their contention another way. They say the acts of the two sovereignties, state and National, in furtherance of a common object, are so interwoven and related that the rights and questions arising from them, and the construction of their effect necessarily create Federal questions.

But we have seen that the Supreme Court of the State decided there was no concurrence of the State in furtherance of the so-called common object, that is, that the various acts in regard to the Illinois and Michigan Canal or the Sanitary District did not include any general scheme for the improvement of the Des Plaines River, and it was certainly within the competency of the court to so determine. The court was also of the view that under the constitution of the State the State did not have the "sovereign right, and as *parens patriae*" to restrain the acts of defendant in error.

The court seemed to consider that it had decided all of the contentions of the State when it had decided the question of the navigability of the river both in its natural condition and its condition after the addition of the waters of the Sanitary District. The fact was and is pivotal. The ordinance for the government of the Northwest Territory and the subsequent acts of Congress set out in the information do not determine navigability of the streams but only define rights which depend upon its existence. Passing the question, therefore whether the ordinance or the acts refer to physical obstructions or to political regulations, and also passing the question whether they were of force after the admission of the State into the Union (on both questions see *Willamette Iron Bridge Co.* v. *Hatch,* 125 U. S. 1), the fact of navigability having been decided against the State by the state court, there is no Federal

right left to review. *Crary* v. *Devlin*, 154 U. S. 619; *Cameron* v. *United States*, 146 U. S. 533; *Egan* v. *Hart*, 165 U. S. 188. In the latter case it was decided that the question of navigability is purely one of fact.

It is said, however, that by the acts of 1899, 1900 and 1902 Congress has taken jurisdiction of the Des Plaines River. If so, the State is not the instrument through which the jurisdiction can be exercised. *United States* v. *Bellingham Bay Boom Co.*, 176 U. S. 211; *Willamette Iron Bridge Co.* v. *Hatch, supra; Cleveland* v. *Cleveland Electric. Ry. Co.*, 201 U. S. 529.

But the cited acts are not appropriations for improvements undertaken but for improvements which may be undertaken; not a jurisdiction exercised but a jurisdiction to be exercised. And, as we have seen, it is alleged in the answer; and the allegation is sustained by the evidence, that the plans of defendant in error's structure were submitted to the War Department and it was declared by that department, "The work proposed is in general harmony with the work of improvement recommended by the Board of Engineers appointed under the authority of the Rivers and Harbors Act of June 13, 1902 (32 Stat. 331, 334, c. 1079)." But the department, inasmuch as Congress had not authorized the improvement of the river, did "not deem it expedient to take further and definite action in the matter of approving the plans." It is manifest, therefore, that the State has no right under Federal laws which it may assert for itself or "on behalf of the citizens of all of the United States," and the motion to dismiss must be granted.

*Dismissed.*