The majority has concluded that the trial judge's failure to consider alternatives to declaring a mistrial violated appellant's double jeopardy rights. Stated more accurately, the majority has concluded that because the trial court failed to follow the procedure set forth in Crim.R. 25(A), appellant's double jeopardy rights were violated. The majority's insistence that trial courts apply this mechanical, inflexible analysis is contrary to (I) double jeopardy jurisprudence and to (II) the language of the rule itself. I would hold that the circumstances here provided justification for the sua sponte declaration of mistrial and that, therefore, appellant's double jeopardy rights were not violated. I therefore respectfully dissent.
 I. A.
As the majority stated, a trial court's sua sponte declaration of mistrial does not violate the double jeopardy doctrine so long as (1) a manifest necessity existed or the ends of public justice would otherwise be defeated and (2) the trial court considered alternatives to declaring a mistrial. Arizona v. Washington (1978), 234 U.S. 497; State v. Glover
(1988), 35 Ohio St.3d 18. The majority concedes that "certainly the imminent death of the trial judge's mother presents exigent circumstances." The majority, however, believes that "the record before [this court] does not support that the [trial] court gave any attention to other, less drastic alternatives to declaring a mistrial."
As the Supreme Court has stated, the majority here "require[s] too much." Washington at 516-517 ("The absence of an explicit finding of `manifest necessity' appears to have been determinative for the District Court and may have been so for the Court of Appeals. If those courts regarded that omission as critical, they required too much. Since the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective. * * * The state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find `manifest necessity' in those words or toarticulate on the record all the factors which informed the deliberateexercise of his discretions." (Emphasis added.)). As will be detailed below, the record here "provides sufficient justification" for the suasponte declaration of mistrial.
Further, the majority's reliance on Glover and Washington is curious since neither case holds that the imminent death of a close relative of the trial judge is insufficient grounds for declaring a mistrial nor that seeking a substitute judge is the alternative to declaring a mistrial. In fact, both cases state that the trial court is to apply an inflexible
test in determining whether there exists a manifest necessity to declare a mistrial. Washington at 506 (stating that Justice Story's classic formulation of the manifest necessity test "do[es] not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge."). Further, the Court inWashington approved of a trial court's mistrial even though the trial court had neither expressly found manifest necessity nor expressly stated that it considered alternative solutions.
 B.
The Ohio Supreme Court has held that "where the trial judge sua sponte
declares a mistrial, double jeopardy does not bar retrial unless the judge's action was instigated by prosecutorial misconduct designed to provoke a mistrial, or the declaration of a mistrial constituted an abuse of discretion." Glover at 21. Here, there is properly no allegation of prosecutorial misconduct[1] and therefore the only inquiry is whether the trial judge here abused his discretion in sua sponte declaring a mistrial after discovering that the death of his mother was imminent.Id. See, also, United States v. Perez (1824), 22 U.S. 579, 580 (The trial judges "are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. * * * But, after all, [these judges] have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests * * * upon the responsibility of the Judges[.]").
Further, in balancing appellant's interest in having her trial completed by one tribunal and society's interest in reaching just judgments, "reviewing courts must also afford considerable deference to the trial court's determination that manifest necessity warranted a mistrial." Johnson v. Karnes (C.A.6, 1999), 198 F.3d 589, 594. Finally, only if the trial judge acts "irrationally or irresponsibly" should a reviewing court find that the trial court abused its discretion.Washington at 514.
 C. 1.
Here, the trial judge, on the morning of what was to be the first day of trial,[2] was informed by his brother that their ill mother would probably not make it through the day. The judge then held an off-the-record discussion with counsel in chambers. In her brief, appellant asserts that during a later argument over defense counsel's motion to dismiss, "defense counsel and the prosecutor gave conflicting and ambiguous accounts of whether a continuance or a visiting judge was requested during [those in-chambers] discussions. It seems clear, however, that the trial judge did not seek to have another judge assigned to continue the case." (Emphasis added.)
What does seem clear is that the trial judge, the prosecutor and defense counsel engaged in some discussion regarding the judge's planned declaration of mistrial. There is reference to this discussion on the record and in both parties' briefs. The judge then stated on the record that "in fairness to both the state and the defense" he could not continue with the trial, since his "duty and obligation is to be there with her." He then declared a mistrial. The court opened the floor to defense counsel, who stated on the record, "As I told you in chambers, I would only object for the record, to protect my client."
The majority states that the trial court "could have" used Crim.R. 25(A) but then holds that the trial court erred by not actually using it. Considering the use of a rule and actually using it are two separate and distinct things. And, that nothing was adopted does not mean that nothing was considered. Therefore, that the trial judge did not seek to have another judge assigned is not the same thing as that the trial judge did not consider seeking another judge, nor is that failure to seek another judge alone constitutionally fatal.
The relevant standard here is that the judge consider alternatives, not that he explicitly recount them on the record, nor that he necessarily adopt one. The majority does not say, "had the trial court considered using Crim.R. 25(A);" the majority says, "had the trial court sought a substitute." In other words, the majority concludes that had the trial court not only considered, but also used Crim.R. 25(A), he would not have erred in declaring a mistrial.
Finally, the majority nowhere says that the trial judge could have considered anything else. There is no requirement that the trial judge only consider Crim.R. 25(A) or that the trial judge consider it at all. The trial judge must merely consider alternatives to declaring a mistrial. Unless the majority is prepared to delineate what alternatives must be considered (difficult to do since the Supreme Court has held,Perez, that "it is impossible to define all the circumstances, which would render it proper to interfere."), the majority cannot hold that a trial judge has abused his discretion by not adopting a permissive rule of criminal procedure.
 2.
Considering these circumstances, I would hold that the trial judge did not abuse his discretion nor did he act "irrationally or irresponsibly."Washington at 514. Not only did he state on the record that fairness dictated that he declare a mistrial, he also took time the morning he discovered his mother's death was imminent to hold an in-chambers discussion with counsel for both sides. Further, he gave defense counsel an opportunity to speak on the record. As the trial judge was in the best position to protect the interests of all involved, this court should defer to his judgment unless, again, he acted irrationally or irresponsibly.
The majority seems to have expected the trial judge to have invoked Crim.R. 25(A), sought another judge who may or may not have taken the case, and then to have waited for that judge's answer while the death of his mother was imminent. The judge said that he did not expect his mother to last the day. If he had abruptly continued the trial and left the courtroom, appellant would be arguing that she was prejudiced by the limbo status of her case.
It is clear from the facts and the circumstances herein that he acted rationally and responsibly and his failure to follow the procedure in Crim.R. 25(A) alone did not violate appellant's double jeopardy rights.
The majority's holding will create a rule that a sua sponte mistrial declaration will not violate the double jeopardy doctrine so long as the trial court scrupulously follows Crim.R. 25(A), a rule that, the majority concedes, is permissive in nature.
 II. A.
Finally, and conceding that using the permissive Crim.R. 25(A) is a means to avoiding double jeopardy violation, I still believe that the language of the rule manifestly does not require the trial judge to make use of it. The rule states in relevant part, "If for any reason the judge before whom a jury trial has commenced is unable to proceed with the trial, another judge designated by the administrative judge * * * may
proceed with and finish the trial * * *." Crim.R. 25(A) (emphasis added). In fact, the original trial judge is required to do precisely nothing. The rule simply says that if the trial judge cannot continue, another judge may be assigned by the administrative judge; it does not require the trial court to request such reassignment.
Further, Crim.R. 25 is entitled "Disability of a Judge." It would appear to me, based on that title and the onus placed not on the trial judge, but rather on the administrative judge and the newly-assigned judge, that this rule truly applies to those situations where the judge himself is unable to finish the trial and, for whatever reason, needs to be removed. In any event, the rule clearly does not require anything of the trial judge. It certainly does not require its use in order to avoid double jeopardy violations.
 B.
Comparing Crim.R. 25(A) with its analogous federal and civil counterparts provides the proper context.[3] Ohio Civ.R. 25(A) is analogous to Fed.R.Civ.P. 25(a). Moreover, they are both similar to their civil counterparts, Ohio Civ.R. 63 and Fed.R.Civ.P. 63. The staff notes to Fed.R.Crim.P. 25(a), mention the similarity with Fed.R.Civ.P. 63, which is entitled, "Inability of a Judge to Proceed." Further, Ohio Civ.R. 63 is, like Ohio Crim.R. 25, entitled, "Disability of a Judge." In fact, the staff notes to the July 1, 1973 amended Ohio Civ.R. 63(A) state that the "amendment simply provides that if the substituting judge `is satisfied that he cannot adequately familiarize himself with the record, he may in his discretion grant a new trial,' rather than proceed with the partially completed jury trial. The rule, as amended, provides for the `new trial' option, set forth in Rule 63(B) and Criminal Rule 25(A) and (B)." (Emphasis added.)
Therefore, when the "disability of a judge" arises, Ohio (along with federal jurisdictions) provides the same remedy for both civil and criminal trials.[4] That almost identical procedures are available in both civil and criminal trials suggests that Ohio Crim.R. 25(A) exists as a means to efficient disposition of cases and not as the alternative to mistrials.
In its determination to step into the shoes of the trial court and to find a means to avoiding mistrial, the majority now holds that the double jeopardy rights of appellant were violated because the trial judge did not avail itself of one, particular, non-binding procedural rule whereby another judge may or may not have continued with the trial. Violations of constitutional rights ought to be made of sterner stuff.
 III.
Finally, the deference I am required by the Supreme Court to give the trial court is bolstered here in that the appellant was not prejudiced by the mistrial. The majority states that, "[t]he record must support an urgent or manifest necessity requiring the trial judge, in the exercise of sound discretion, to discharge the jury in order to assure that therebe a fair trial" (emphasis added). As stated above, it would have been unfair for the trial court to continue the trial until such time as he could return to the courtroom. Further, appellant's only suggestion of unfairness is based on the double jeopardy claim, not on the proceedings themselves. Appellant seeks not a fair trial, but clemency based on the trial court's failure to cross every "t" and dot every "i" on the record, a burden that is simply not required under double jeopardy jurisprudence.
The majority approvingly cites the Supreme Court's decision in Wade v.Hunter (1949), 336 U.S. 684, 689, for the rule that, "[a] defendant's valued right to have his trial completed by a particular tribunal must in some circumstances be subordinated to the public's interest in fair trials designed to end in just judgments." I believe that this is just such a circumstance. Appellant's valued right to have her trial completed by the original judge and jury should have been subordinated to society's interest in a fair trial to end in a just judgment.
Again, and as the majority concedes, there was a manifest necessity. There was no judicial or prosecutorial misconduct (neither the court nor the prosecution attempted to provide the state with a better opportunity to convict appellant). There was no prejudice to appellant. The best argument appellant could muster was that the trial judge failed to adopt Crim.R. 25(A), a rule that imposes no duty on the trial judge. The judge's failure to use it was not constitutionally fatal and the majority's insistence on an inflexible test is contrary to double jeopardy jurisprudence.
[1] There is also, properly, no allegation of judicial misconduct.
[2] The jury was already sworn in. The appellant is correct that double jeopardy attaches at the swearing in of the jury. See, e.g., State v.Gustafson (1996), 76 Ohio St.3d 425.
[3] Fed.R.Crim.P. 25(a) states, "If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial."
Fed.R.Civ.P. 63 states in relevant part, "If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties."
Ohio Civ.R. 63(A) states, During trial. If for any reason the judge before whom a jury trial has been commenced is unable to proceed with the trial, another judge, designated by the administrative judge, * * *, may proceed with and finish the trial upon certifying in the record that he has familiarized himself with the record of the trial; but if such other judge is satisfied that he cannot adequately familiarize himself with the record, he may in his discretion grant a new trial."
[4] Civ.R. 63(A) and Crim.R. 25(A) are treated similarly by courts. See, e.g., Vergon v. Vergon (8th Dist. 1993), 87 Ohio App.3d 639, 643;Berger v. Berger (8th Dist. 1981), 3 Ohio App.3d 125.